Laurie Kim SHULZE, Plaintiff and Appellee,

v.

Floyd Wesley SHULZE, Defendant and Appellant.

Civ. No. 10177.

Supreme Court of North Dakota.

July 15, 1982.

Edward J. Bosch, Minot, for plaintiff and appellee; submitted on brief.

Floyd Wesley Shulze, defendant and appellant, pro se; submitted on brief.

VANDE WALLE, Justice.

Floyd Wesley Shulze appealed from a judgment of divorce entered by the district court of Ward County. We affirm.

Floyd and Laurie Kim Shulze were married on March 4, 1980, in Desert Hot Springs, California. They separated the day after the wedding. Laurie testified that she married Floyd, as a favor to him, to avoid having to testify against him regarding some drug charges in Minot. They had been separated for about two years when Laurie sought a divorce. The grounds for divorce were the parties' irreconcilable differences and that Floyd was convicted of a felony. At the time of the proceedings Floyd was an inmate at the North Dakota State Penitentiary.

The issues, as we understand them from the appellant's brief, are as follows:

1. Whether or not Floyd was entitled to appear personally at the divorce trial.

2. Whether or not Floyd was entitled to a change of venue.

3. Whether or not Floyd is entitled to know the name of the father of Laurie's expected child in order to avoid future claims for child support.

4. Whether or not the property division provided for by the judgment may be challenged on the basis that Laurie had taken and sold some of Floyd's personal property.

Floyd's argument that his civil rights were violated because he was not allowed to attend the divorce trial is without merit. Three days after the notice of trial was sent to Floyd he requested an order from the court allowing him to appear personally. The trial judge responded the next day, by a letter to Floyd and the warden of the State Penitentiary in Bismarck, explaining that an order for release would require Floyd to come up with a plan for transportation to Minot and security satisfactory to the warden and that this was to be done at no expense to the State.

At the divorce hearing the judge noted Floyd's absence and explained that the day before the hearing he received from Floyd what was entitled a "motion for enlargement of time." Treating it as a request for a continuance, the trial judge stated that no ground was set forth in the motion except that the defendant was in prison. The motion was thereupon denied because it was untimely and because it stated no substantial ground for a continuance and offered no prospect that Floyd's status would be changed in any way should a continuance be granted.

The court also noted that security would be of utmost importance because Floyd had previously attempted to escape from institutions in North Dakota and Montana.

The case of *In Interest of F. H.*, 283 N.W.2d 202 (N.D.1979), contains an extensive discussion of whether or not an incarcerated person is entitled to be personally present at a hearing in a civil case. Among the cases discussed is *State ex rel. Gladden v. Sloper*, 209 Or. 346, 306 P.2d 418 (1957), in which we summarized the holding of the Supreme Court of Oregon as follows:

"that the failure to deliver an inmate to the courtroom so he could attend a divorce proceeding did not deprive him of his constitutional rights guaranteed by the Fourteenth Amendment because his ability to give testimony by deposition and to be represented by counsel were unimpaired." [Footnote and citations omitted.] *In Interest of F. H., supra*, 283 N.W.2d at 208–209.

This court concluded:

"From our review of cases from the various jurisdictions and the principles of law involved, we are compelled to conclude that a convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate. Any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court.

". . . The exercise of the trial court's discretion concerning a prisoner's right to appear personally in a civil action will not be overturned by this court in the absence of an abuse of that discretion which we have defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court." *In Interest of F. H.*, 283 N.W.2d at 209.

■ The circumstances surrounding Floyd's inability to appear personally at the divorce hearing do not involve an abuse of discretion by the trial court. Floyd's ability to give testimony by deposition and to be represented by counsel was unimpaired by the court and no convincing reasons for a personal appearance were brought forth.

■ Section 14–05–17, N.D.C.C., entitled Laurie, after having met the residency requirements, to a divorce from Floyd no matter where he resided. Floyd's argument that he was entitled to a change of venue to Burleigh County is unfounded. The fact that he is an inmate at the State Penitentiary does not constitute sufficient ground to change the venue of the divorce hearing from Ward County, where Laurie is a resident, to Burleigh County, where the Penitentiary is located.

Floyd claims that his incarceration at the Penitentiary makes him a Burleigh County resident and his right to a trial in Burleigh County is therefore afforded by Section 28–04–05, N.D.C.C. The rules for determining residence set forth in Section 54–01–26, however, do not support any argument that an inmate is a resident of the county where he is incarcerated. Nothing in the record indicates that Floyd's residence in Burleigh County is, in any way, intentional or intended to be permanent. [See *Mittelstadt v. Bender*, 210 N.W.2d 89 (N.D.1973): Schoolteacher and wife did not lose their residency by moving from Killdeer to Grand Forks for one year so that husband could secure a graduate degree at the University; there was no showing of intent to change residence permanently.]

Other than the assertion in Floyd's brief that he is a resident of Burleigh County, there is no indication as to his residence except a statement in Laurie's brief that he is a lifelong resident of Ward County.

■ The cases in which a court may change the place of trial are set forth in Section 28–04–07. None of them apply to the instant case. The granting of an application for a change of venue is within the sound discretion of the trial court and will not be interfered with unless an abuse of discretion is shown. *Curren v. Story*, 41 N.D. 361, 170 N.W. 875 (1918). In the instant case, the facts do not indicate that Floyd was entitled to a change of venue under Section 28–04–07 or Section 28–04–05, or that the trial court abused its discretion by hearing the case in Ward County.

■ Floyd's apprehensions about possible child-support claims against him for Laurie's expected child, fathered by another man, are not necessarily groundless. See Section 14–05–21, N.D.C.C. ("Legitimacy of children—Adultery by wife"). In this instance the divorce was granted to Laurie on the ground of irreconcilable differences rather than to Floyd on the ground of Laurie's adultery. The trial court made no finding or provision in the judgment regarding the legitimacy of the expected child. However, in view of the uncontradicted evidence at trial, it would have been appropriate for the trial judge to make a provision in the judgment, pursuant to Section 14–05–21, N.D.C.C., that the child is not Floyd's, in order to avoid any problems with future claims against Floyd for child support. Notwithstanding the absence of such a provision, the transcript stands as conclusive evidence that Floyd is not the father of Laurie's expected child. The

name of the child's father is irrelevant in the context of this appeal.

■ By this appeal Floyd seeks to regain certain items of personal property that he claims Laurie sold, or to receive money for their replacement. The judgment, however, did not give Laurie any of his property nor does the record show that she has possession of any of his property. The judgment provides that "[e]ach of the parties are awarded their separate property which they brought into the marriage and presently owned and in their possession." Therefore, if Laurie wrongfully took any of Floyd's property his remedy is not to be pursued by an appeal from this judgment but, rather, by an independent action against her or any other responsible party.

We conclude that Floyd's absence at the divorce hearing did not involve a denial of his rights and, further, that he was not entitled to a change of venue. In addition, any claim he has for property allegedly taken or sold by Laurie is not properly pursued by an appeal from the divorce judgment.

The judgment of divorce is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.