731 P.2d 1244

John Albert MARTINEZ, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF LA PAZ, Honorable Michael Irwin, a judge thereof, Respondent Judge,

Elvira MARTINEZ, Real Party
in Interest.

No. 1 CA–SA 009.

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 20, 1987.

Colorado River Indian Tribes Legal Aid Dept. by Raymond Vaca, Jr., Parker, for petitioner.

Hunt, Stanley, Hossler & Rourke, Ltd. by H. Berkeley Rourke, Parker, for respondent.

## OPINION

SHELLEY, Judge.

John Albert Martinez (petitioner) and the real party in interest, Elvira Martinez (respondent) were married in Parker, Arizona. Their marital domicile until separation was at all times on the Colorado River Indian Tribes reservation located within La Paz County, Arizona. Petitioner is a member of the Colorado River Indian Tribes and respondent is a non-Indian. Respondent filed a petition for dissolution of marriage in La Paz County Superior Court on May 21, 1986. On June 2, 1986, the court gave temporary custody of their children to the respondent. On the same day, petitioner filed a motion to dismiss, claiming that the superior court did not have jurisdiction in the case because petitioner is an Indian and the marital domicile was on the Indian reservation. The motion to dismiss was denied by the superior court, the court concluding that it had subject matter jurisdiction because the respondent was not an Indian and resided within the State of Arizona. The trial court, over the objection of the petitioner, continued the order granting temporary custody of the children to the respondent.

The court found that it had no personal jurisdiction over petitioner because of insufficient contacts with the State of Arizona, and that petitioner had been properly served on the reservation.

On July 15, 1986, petitioner filed a petition for dissolution of marriage in the tribal court, alleging that the tribal court was the more appropriate forum to determine all issues involved in the case since the reservation was the marital domicile for their entire 14 years of marriage. Thereafter petitioner filed in the La Paz County Superior Court a motion for abstention and motion to vacate the temporary custody order. On August 15, 1986, the court entered the following order:

1.) Respondent has appeared only for the purpose of contesting jurisdiction and has not subjected himself to the jurisdiction of this Court.

2.) This Court lacks personal jurisdiction over the Respondent and therefore has no authority to enter orders relating to property rights of the Respondent or support.

3.) This Court may assume jurisdiction over the issue of child custody. The child and one parent are domiciled in this State and there is substantial evidence on the issue of custody available in this State. A.R.S. § 25–331(A) and § 8–403(A) (Supp.1985).

4.) This Court does not decline to exercise its jurisdiction. The Court has considered those factors as set forth in A.R.S. § 8–407(C) and § 8–401(A) and concludes that it is not an inconvenient forum.

Petitioner timely filed this special action asking this court to order the trial court to grant petitioner's motions to vacate temporary custody and for abstention, and mo-

tion for finding of inconvenient forum because the trial court abused its discretion in denying respondent's motions.

The only question presented by petitioner is the applicability of the Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401 to –424 (Supp.1986). Respondent's cross-issue alleges that the court erred in finding that the court did not have personal jurisdiction over the petitioner.

## PERSONAL JURISDICTION

■ Personal jurisdiction requires reasonable notice and sufficient connection between the petitioner and the jurisdiction where the action has been brought so that it is reasonable and fair to require him to appear in that jurisdiction. *Kulko v. Superior Court*, 436 U.S. 84, 91–92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132, 140–41 (1978), *reh'g denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978). The notice requirement has been met. The husband was served with actual notice by a process server certified by the Colorado River Indian Tribes on the reservation. The trial court considered all of the evidence having to do with petitioner's contacts off the reservation and found they were insufficient to confer personal jurisdiction upon the state court. After reviewing the evidence, we find that the trial court did not abuse its discretion in so finding.

Respondent relies on the case of *Francisco v. State*, 113 Ariz. 427, 556 P.2d 1 (1976). Francisco was served on the Indian reservation by a person who was not authorized by the Papago Tribe to serve process pursuant to tribal law. The court stated in a footnote that had he been served by one authorized to serve him on the reservation, there would have been personal jurisdiction. However, that case was replete with evidence of minimum contacts off the reservation. *Francisco*, 113 Ariz. at 428 & n. 1, 556 P.2d at 2 & n. 1. The only thing lacking in the case at bar is sufficient minimum contacts off the reservation, therefore the trial court was correct in finding that there was no personal jurisdiction of the petitioner.

■ State courts do not have jurisdiction over an Indian living on an Indian reservation absent sufficient minimum contacts by the Indian within the state away from the reservation. 41 Am.Jur.2d *Indians* § 20 (1968) states:

> However, a reservation Indian may not be sued in a state court, in the absence of specific Congressional legislation permitting *such suits where the act or transaction out of which the suit arose occurred on the reservation and is within the jurisdiction of the tribal court.* (Emphasis added)

*Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), is cited as authority for that statement.

■ In this case, the marital domicile was on the reservation; the children were conceived on the reservation; separation occurred on the reservation; and the respondent lives on the reservation, so the transaction out of which the suit arose occurred on the reservation and is within the jurisdiction of the tribal court. In *Indian Oasis School District No. 40 v. Zambrano*, 22 Ariz.App. 201, 202, 526 P.2d 408, 409 (1974), Division 2 of the Court of Appeals stated: "They are correct when they say that, absent governing acts of Congress, the question has always been whether the State action infringes on the right of reservation Indians *to make their own laws and to be ruled by them.*" (Emphasis added). The court cites *Williams v. Lee* as authority for this statement.

The same interpretation of *Williams v. Lee* is given in the case of *Piaz v. Hughes*, 76 N.M. 562, 566, 417 P.2d 51, 53 (1966).

In this case, the Indian tribes have their own tribal code, divorce code and tribal court. Any divorce decree entered by that court must be accepted as final by our state court, therefore if the state courts exercised personal jurisdiction over Martinez, it would constitute an interference with the right of reservation Indians to make their own laws and be ruled by them.

In the case of *State ex rel. Iron Bear v. District Court*, 162 Mont. 335, 345, 512

P.2d 1292, 1298 (1973), the Montana Supreme Court stated:

> The court thus, in *Mescalero [Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 115]* reiterated the proposition that the test as to the application of state laws on reservations is whether: (1) such application would interfere with reservation self-government, or (2) whether such application would impair a right preempted by federal law. The state thus has residual jurisdiction in areas where the federal law has not preempted state activity *and the tribes have determined not to exercise jurisdiction.* (Emphasis added)

In the Montana case, the tribe had specifically legislated that no marriage or divorce of any member of the reservation would be valid unless granted or decreed in accordance with the laws of the State of Montana. The Montana court further held:

> Before a district court can assume jurisdiction in any matter submitted to it, it must find subject matter jurisdiction by determining: (1) whether the federal treaties and statutes applicable have preempted state jurisdiction; (2) whether the exercise of state jurisdiction would interfere with reservation self-government; and (3) whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction.

*Iron Bear,* 162 Mont. at 346, 512 P.2d at 1299.

In this case, the tribe has determined to exercise jurisdiction by giving its tribal court authority in domestic relations cases.

The Montana Supreme Court in *Flammond v. Flammond,* Mont., 621 P.2d 471 (1980), applied the minimum contacts test to ascertain if, in a URESA action, the Montana District Court had in personam jurisdiction over an Indian father residing on a Montana Indian reservation. After pointing out that the father had "injured neither persons nor property in the State of Montana," it held that the father could not "be said to be 'present' within the responding state, for the reservation is clearly beyond the territorial jurisdiction of the Montana courts," and that the District Court had no basis for asserting jurisdiction. *Flammond,* Mont., 621 P.2d at 473-74.

■ Respondent posits that petitioner submitted himself to the jurisdiction of the court at the time the court entered the temporary custody order giving custody to the respondent and ordering petitioner to pay monthly child support.

The record shows that petitioner at all times objected to the jurisdiction of the court. The court expressly found that he appeared only for the purpose of contesting jurisdiction and did not subject himself to the jurisdiction of the court. We agree.

The trial court correctly ruled that it did not have personal jurisdiction over the petitioner.

## DOES THE UNIFORM CHILD CUSTODY JURISDICTION ACT APPLY BETWEEN TRIBAL AND STATE COURTS?

■ The Uniform Act applies to states. It defines a state to mean any state, territory or possession of the United States. In *Brown v. Babbitt Ford, Inc.,* 117 Ariz. 192, 571 P.2d 689 (App.1977), the court stated that for the purposes of 28 U.S.C. § 1738, the word "territory" used therein was not intended by Congress to include Indian reservations, but the court stated:

> However, the cardinal rule of any statutory interpretation is to attempt to ascertain the intent of the legislative body which enacted that statute.

*Brown,* 117 Ariz. at 197, 571 P.2d at 694.

We hold that Indian reservations are territories or possessions of the United States as used in the Uniform Child Custody Jurisdiction Act and that this was the intention of the legislature which enacted it.

In the case of *Leon v. Numkena,* 142 Ariz. 307, 689 P.2d 566 (App.1984), this court held that tribal court judgments did not require full faith and credit but that a Navajo divorce decree was conclusive and binding against challenge in superior court as a matter of comity and out of deference

and mutual respect. *Numkena,* 142 Ariz. at 311, 689 P.2d at 570. In the case of *Lynch v. Olsen,* 92 Ariz. 354, 377 P.2d 199 (1962), the Arizona Supreme Court held that proceedings in a Navajo tribal court must be considered the same as proceedings in a court of any state or foreign country. The *Leon* and *Lynch* cases further strengthen this court's interpretation that the definition of a "state" in the Act includes Indian reservations.

Respondent posits that the Act would not be applicable to tribal courts since the tribe had not adopted the Uniform Act. This issue was discussed in *Allison v. Superior Court,* 99 Cal.App.3d 993, 998, 160 Cal. Rptr. 309, 311 (1979), wherein the court stated:

> The controversy at bench thus involves two states, each of which possesses a legitimate claim to adjudicate the cause. Past similar duplication of jurisdiction in child custody causes led to countless unseemly controversies among courts of different states arising out of disputes between parents over child custody and visitation rights, a situation which deteriorated into public scandal and eventually brought about enactment of the Uniform Child Custody Jurisdiction Act (Civ. Code, §§ 5150–74), legislation which was crafted to avoid unseemly judicial competition among states in matters of child custody and visitation. California adopted the Act in 1973 but Texas has not. As a consequence, those provisions of the Act which envisage reciprocal and uniform exercise of jurisdiction between states possessing concurrent jurisdiction over child custody and visitation matters have not come into play with respect to Texas. *Nevertheless, those provisions of the Act that do not demand state reciprocity are presently binding on the courts of California, even with respect to such non-adopting states as Texas. We must therefore determine the jurisdiction of the California court on the basis of the Act, to the extent that the Act's adoption represents an unconditional declaration of California legislative policy unrelated to the Act's provisions for state reciprocity.* (Emphasis added)

We agree with the *Allison* case and find that we must determine the issue before this court in light of the Uniform Act.

In this case, both the state and the reservation are the domiciles of the children. Because of the state court's lack of jurisdiction on the reservation, the primary domicile would be on the reservation, therefore A.R.S. § 8–403(A)(1) (Supp.1986) would be applicable. A.R.S. § 8–403(A)(1) states:

> The superior court of the state of Arizona is vested with jurisdiction to make a child custody determination by initial or modification decree *if any* of the following apply:
> 1. This state is the domicile *or the home state of the child* at the time of commencement of the proceeding.... (Emphasis added.)

Substantial evidence is available in both the state courts and the reservation concerning the children's present care, training and personal relationships.

A.R.S. § 8–403(A)(2) (Supp.1986) states:

> It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and *there is available in this state substantial evidence* concerning the child's present or future care, protection, training and personal relationships. (Emphasis added.)

■ With respect to future care and protection, there is a problem. The La Paz County Superior Court does not have in personam jurisdiction to determine child support, therefore in effect the state lacks substantial evidence in that regard because such evidence would be inadmissible in the state court because of its lack of in personam jurisdiction.

Section 8–407(C)(3) (Supp.1986) provides:

> C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another

state assume jurisdiction. For this purpose it may take into account the following factors, *among others:*

3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state. (Emphasis added)

■ In addition, A.R.S. § 8–407(A) (Supp.1986) states that a court may decline to exercise its jurisdiction at any time before making a decree if it finds that "it is an inconvenient forum to make a custody determination under the circumstances of the case but that a court of another state is a more appropriate forum."

With regard to the children's future care and protection, the state lacks substantial evidence with respect thereto.

We hold that the state court is an inconvenient forum to make a custody determination in view of its lack of in personam jurisdiction to determine issues of child support and property division. The children's primary residence at the time the action was filed was on the reservation.

The judgment of the trial court is reversed and the case is remanded with directions to the trial court to decline to exercise its jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act. The trial court is further directed to vacate the temporary custody order.

CORCORAN, P.J., and GREER, J., concur.