Raphael August BYZEWSKI,
Plaintiff and Appellee,

v.

Marilynn Lavonne BYZEWSKI,
Defendant and Appellant.

Civ. No. 870132.

Supreme Court of North Dakota.

Sept. 20, 1988.

Robert A. Alphson & Associates, Grand Forks, for plaintiff and appellee; argued by Lael L. Schmidt. Appearance by Randy Sickler, Law Student.

Duane E. Houdek, Legal Assistance of North Dakota, Bismarck, and Albert Jones, Dakota Plains Legal Services, Mission, S.D., for defendant and appellant; argued by Albert C. Jones. Appearance by Duane E. Houdek.

LEVINE, Justice.

Marilynn LaVonne Byzewski, an enrolled member and resident of the Standing Rock Sioux Indian Reservation, appeals from a district court divorce judgment awarding Raphael August Byzewski, a non-Indian currently residing in Grand Forks County, custody of the couple's three children and ordering that she pay child support. Marilynn asserts that the district court lacked subject matter jurisdiction to adjudicate Raphael's custody and support claims. We agree and accordingly reverse the judgment insofar as it awards Raphael custody of the children and orders Marilynn to pay child support.

Marilynn and Raphael have been married twice to each other. They were first married on December 2, 1979 in Grand Forks, after having lived together for approximately eight years. Prior to that marriage, three children were born to the couple: Twyla, age 16; Raphael, Jr., age 15; and Joel, age 11. The Grand Forks County District Court granted the parties their first divorce on December 18, 1980, while they were living in Grand Forks. Under the terms of that divorce decree, Raphael was awarded custody of Raphael, Jr., and Marilynn was awarded custody of Twyla and Joel. The parties subsequently stipulated that Raphael's parents, Theodore and Josephine Byzewski of Manvel, North Dakota, have legal custody of Raphael, Jr., and Joel. The divorce judgment was amended accordingly by the district court on January 26, 1982. Under the amended decree, Marilynn retained legal custody of Twyla.

On May 24, 1983, the parties were remarried to each other at McIntosh, South Dakota, and along with the three children, began living on the Standing Rock Sioux Indian Reservation. Although the parties never sought to have the Grand Forks County District Court vacate the prior amended divorce decree, the grandparents did not object to the parties' taking physical custody of the two boys upon their remarriage. The family continued to live together on the reservation until March 13, 1986, when the events setting the stage for this controversy occurred.

On that date the parties separated and Marilynn obtained from the Standing Rock Sioux Tribal Court: 1) a "Temporary Custody Order" granting custody of the three children to Marilynn "until further Order of this Court;" 2) a "Temporary Restraining Order" effective for 90 days restraining Raphael from entering Marilynn's residence and "from any form of physical or verbal harassment to Marilynn;" 3) an order requiring Raphael to remove his personal belongings from Marilynn's residence; 4) a summons ordering Raphael to appear before the tribal court to answer a complaint charging him with "alcoholism;" 5) a "Divorce Information" sheet listing the names and dates of birth of the children, the marital property, and the reason for requesting a divorce; and 6) an order waiving the six-month waiting period for divorce under tribal law and ordering that "the divorce hearing be set as soon as possible." The record reflects that on March 13, 1986, Raphael was personally served on the reservation with the Temporary Custody Order, the Temporary Restraining Order, the order requiring him to remove his personal belongings, and the summons to answer the complaint. The Divorce Information sheet and the order waiving the six-month waiting period for divorce were subsequently received by Raphael's attorney in Grand Forks.

Raphael left the Reservation with Raphael, Jr. and Joel, and on March 14, 1986, he filed an action for divorce against Marilynn in Grand Forks County District Court. Marilynn was personally served with the summons and complaint on the Reservation by a Standing Rock Law Enforcement Services police officer. On March 14, the district court also issued an ex parte order continuing legal custody of Raphael, Jr. and Joel in the paternal grandparents. On April 10, 1986, the district court issued an

interim order awarding custody of the boys to the paternal grandparents.

After Raphael applied for a default judgment, Marilynn made a special appearance through counsel and moved to dismiss the divorce action for lack of jurisdiction. On October 3, 1986, the district court ruled that it had subject matter jurisdiction of the divorce action, as well as personal jurisdiction over Marilynn. The court further concluded that its jurisdiction "is not rendered subsequent in time" by the tribal court's issuance of the various orders on March 13, 1986 because they "did not constitute an action for divorce" but were "consistent with the continuation of the parties' marriage." The court also found that its acceptance of jurisdiction over the divorce case would not impermissibly infringe on the right of reservation Indians to make their own laws and to be governed by them "because absolute denial of state court jurisdiction in a conflict of laws case such as this would subject non-Indian spouses of Indian persons to tribal jurisdiction without the benefit of Indian citizenship."

On December 9, 1986, Marilynn sought a divorce in tribal court and caused a summons and divorce petition to be mailed to Raphael's counsel in Grand Forks. A default "judgment and decree of divorce" was issued by the tribal court on February 25, 1987. The tribal court's decree awarded custody of the three children to Marilynn and ordered Raphael to pay child support and alimony. The district court held a default divorce hearing on February 17, 1987 and issued its divorce judgment on March 12, 1987. The district court's divorce judgment awarded custody of the three children to Raphael, with an option of guardianship to continue with the paternal grandparents, and ordered Marilynn to pay child support. Marilynn has appealed.

Marilynn asserts that the district court lacked subject matter jurisdiction to adjudicate the custody and support matters in this divorce action brought by a non-Indian against a member and resident of the reservation because the cause of action arose on the reservation and, consequently, the

district court's acceptance of jurisdiction impermissibly infringed on the Tribe's right of self-governance.

Marilynn principally relies upon the infringement test set forth in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), in which the United States Supreme Court held that state courts do not have jurisdiction over a claim by a non-Indian against an Indian which arises on an Indian reservation. In that case a non-Indian, operating a general store on an Indian reservation, brought suit in Arizona state court to collect for goods sold on credit to a tribal member. The Supreme Court concluded that to allow the exercise of state jurisdiction under the circumstances "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee, supra,* 358 U.S. at 223, 79 S.Ct. at 272. Only "where essential tribal relations were not involved and where the rights of Indians would not be jeopardized" could state jurisdiction be asserted. *Williams v. Lee, supra,* 358 U.S. at 219, 79 S.Ct. at 270. Thus, absent congressional action, the question is whether the state action infringes on the right of reservation Indians to make their own laws and be ruled by them. *Williams v. Lee, supra,* 358 U.S. at 220, 79 S.Ct. at 271.

In *R.J. Williams Co. v. Fort Belknap Housing Auth.,* 719 F.2d 979, 983 (9th Cir. 1983), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), the court observed that:

"A tribe's interest in self-government could be implicated in one of two ways. First, if a state or federal court resolves a dispute which was within the province of the tribal courts or of other nonjudicial law-applying tribal institutions, that court would impinge upon the tribe's right to adjudicate controversies arising within it. *Fisher v. District Court,* 424 U.S. 382, 387–88, 96 S.Ct. 943, 946–47, 47 L.Ed.2d 106 (1976) (per curiam); *see Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 65–66, 98 S.Ct. 1670, 1680–1681, 56 L.Ed.2d 106 (1978). Second, if the dis-

pute itself calls into question the validity or propriety of an act fairly attributable to the tribe as a governmental body, tribal self-government is drawn directly into the controversy. *Littell [v. Nakai,* 344 F.2d 486, 490 (9th Cir.1965) ]."

The question becomes whether *Williams v. Lee* is applicable to child custody and support claims incident to a divorce action between a non-Indian and an Indian. We would have little difficulty in finding *Williams v. Lee* applicable to a case involving Indian spouses residing on the reservation. We are less certain about its applicability to the circumstances here. However, given the clear policy of the United States Supreme Court favoring tribal self government [*Three Affiliated Tribes v. Wold Engineering,* 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986)], we conclude that, under the circumstances of this case, in particular, because first-in-time temporary orders were issued by the tribal court and because the custodial domicile was the reservation, *Williams v. Lee* is applicable and that the exercise of jurisdiction by the state court interferes with the sovereignty of the Tribe.

Applying the rationale of *Williams v. Lee* to this case is problematic because there are jurisdictional prerequisites associated with the incidents of divorce which are not usually present in an ordinary civil action.

In ordinary civil actions jurisdiction over the subject matter and jurisdiction over the parties are essential for a court to properly act in a case. *Reliable, Inc. v. Stutsman County Comm'n,* 409 N.W.2d 632, 634 (N.D.1987). A court has subject matter jurisdiction if it has the authority to hear and determine cases of the general class to which the particular action belongs. *Reliable, Inc. v. Stutsman County Comm'n, supra.* A court gains personal jurisdiction over a defendant to satisfy the due process clause of the United States Constitution if the defendant has reasonable notice that an action has been brought *and* sufficient connection with the forum state "to make it fair to require defense of the action in the forum." *Kulko v. Superior Court of California, Etc.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). Although an Indian reservation is not the equivalent of a sister state, it is "a dependent sovereign or quasi sovereign," *Malaterre v. Malaterre,* 293 N.W.2d 139, 144 (N.D.1980), and "[i]t is well-settled that a reservation Indian's domicile on the reservation is not an in-state contact which grants jurisdiction to state courts." *State ex rel. Flammond v. Flammond,* 621 P.2d 471, 473 (Mont.1980).

The district court divorce judgment grants Raphael a divorce from Marilynn, awards custody of the three children to Raphael, and orders Marilynn to pay child support. Each of these matters is governed by different jurisdictional principles in state court.

█ District courts are granted subject matter jurisdiction to entertain divorce actions by the constitution and laws of this state. *Schillerstrom v. Schillerstrom,* 75 N.D. 667, 699–702, 32 N.W.2d 106, 122–124 (1948). However, a court need not have personal jurisdiction over both spouses to validly terminate the marital status so long as the requirements of procedural due process are met. *See Williams v. State of North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Thus, as long as the plaintiff satisfies the six-month residency requirement under § 14–05–17, N.D.C.C., prior to the entry of the decree, a court has subject matter jurisdiction to grant the divorce "no matter where" the defendant spouse resides. *See Shulze v. Shulze,* 322 N.W.2d 250, 252 (N.D.1982).

█ But meeting the subject matter and personal jurisdictional requirements to sever the marriage status itself does not necessarily grant the court authority to adjudicate related incidents of the marriage. Because "a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant," a court must have personal jurisdiction over a nonresident spouse in order to validly adjudicate matters of alimony or spousal support, *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 (1957), and child support. *See Kulko v.*

*Superior Court of California, Etc., supra.*

A district court's subject matter jurisdiction to adjudicate an interstate child custody dispute in an initial divorce proceeding is governed by the jurisdictional provisions of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C. [UCCJA], and to some extent by the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A. *See* Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn.L.Rev. 711, 764–790 (1982). However, we have held that the UCCJA is inapplicable to jurisdictional disputes between a state court and a tribal court. *Malaterre v. Malaterre, supra.* Furthermore, whether constitutional due process requires that a court in a divorce action have personal jurisdiction over a nonresident spouse in order to make a valid child custody award is far from settled. *Compare May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) and Hazard, *May v. Anderson: Preamble to Family Law Chaos,* 45 Va.L.Rev. 379 (1959) with Coombs, *supra,* 66 Minn.L.Rev. at 735–764; Annot., *Jurisdiction to award custody of child having legal domicile in another state,* 4 A.L.R.2d 7 (1949); Annot., *Jurisdiction of court to award custody of child domiciled in state but physically outside it,* 9 A.L.R.2d 434 (1950). The drafters of the UCCJA take the position that "[t]here is no requirement for technical personal jurisdiction" of a nonresident spouse in child custody cases. Commissioners' Note, Uniform Child Custody Jurisdiction Act § 12, 9 U.L.A. 274 (Part I, 1988).

However, although the requirements for personal jurisdiction may vary, a state court must nevertheless have subject matter jurisdiction to adjudicate the child custody and support matters that often arise in a divorce action. North Dakota law furnishes subject matter jurisdiction of child custody and maintenance and child support to state district courts. *See* §§ 14–05–22 and 14–05–24, N.D.C.C.; *Schillerstrom v. Schillerstrom, supra.* However, that authority may be circumscribed by

federal law under the Supremacy Clause. *See Ridgway v. Ridgway,* 454 U.S. 46, 54, 102 S.Ct. 49, 54–55, 70 L.Ed.2d 39 (1981).

Against this backdrop we note that the infringement test of *Williams v. Lee,* while resembling in some respects a sufficient contacts test for ascertaining personal jurisdiction, is actually a rule for gauging whether a court has subject matter jurisdiction over the action itself. *E.g., R.J. Williams Co. v. Fort Belknap Housing Auth., supra,* 719 F.2d at 983–985; *Milbank Mutual Ins. Co. v. Eagleman,* 705 P.2d 1117, 1118–1119 (Mont.1985); F. Cohen, *Handbook of Federal Indian Law* at pp. 341–344 (1982). Furthermore, contacts within the state but off the reservation, which might arguably suffice to grant a court personal jurisdiction over an Indian domiciled on a reservation, are not necessarily sufficient to grant the court subject matter jurisdiction under the infringement test. *See generally Fisher v. District Court,* 424 U.S. 382, 389 n. 14, 96 S.Ct. 943, 948 n. 14, 47 L.Ed.2d 106 (1976); *McKenzie County Social Services Bd. v. V.G.,* 392 N.W.2d 399, 402 (N.D.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987).

In *Fisher v. District Court, supra,* the Supreme Court applied the infringement test and held that the tribal court had exclusive subject matter jurisdiction over an adoption proceeding in which all parties were members of the tribe and residents of the reservation. Although the birth of the child and the marriage and divorce of the parents occurred off the reservation, the Court found the adoption proceeding "appropriately characterized as litigation arising on the Indian reservation" inasmuch as all parties resided on the reservation at all relevant times. *Fisher v. District Court, supra,* 424 U.S. at 389, 96 S.Ct. at 948. We believe that if an adoption proceeding is properly characterized as litigation arising on an Indian reservation, so too is a child custody claim incident to a divorce proceeding. Both proceedings determine the status of litigants. *See* Coombs, *supra,* 66 Minn.L.Rev. at 745 ["The legal relationships involved in cases of child custody, adoption, divorce, separation, and annul-

ment of marriage are considered statuses." (footnotes omitted)].

The Court also stated that "[i]n a proceeding such as an adoption, which determines the permanent status of litigants, it is appropriate to predicate jurisdiction on the residence of the litigants rather than the location of particular incidents of marginal relevance, at best." *Fisher v. District Court, supra,* 424 U.S. at 390 n. 14, 96 S.Ct. at 948 n. 14. Here, the reservation served as the residence of the parties and their children during the second marriage.

Moreover, domestic relations among its members is an important area of "traditional tribal control." *Three Affiliated Tribes v. Wold Engineering, supra,* 476 U.S. at 889, 106 S.Ct. at 2313. *See also Fisher v. District Court, supra,* 424 U.S. at 388–389, 96 S.Ct. at 947–948; *United States v. Quiver,* 241 U.S. 602, 603–604, 36 S.Ct. 699, 700, 60 L.Ed. 1196 (1916); F. Cohen, *Handbook of Federal Indian Law,* at p. 249 (1982). We do not believe this tribal interest in domestic relations dissipates merely because one of the parties to a marriage is a non-Indian. Thus, in view of the traditional tribal interest over domestic relations, which we believe to be an integral component of tribal self-government, a non-Indian divorce plaintiff's compliance with the six-month residency requirement of § 14–05–17, N.D.C.C., is not necessarily determinative of a district court's subject matter jurisdiction over such matters as child custody and support where the custodial domicile has at all pertinent times been on the reservation. Rather, we believe it is only one factor to consider under the infringement test of *Williams v. Lee.* Under the circumstances of this case, we conclude that this factor is insufficient to outweigh the Tribe's interest in regulating domestic relations on the reservation.

It is undisputed that Raphael and Marilynn's second marriage occurred on the reservation, that they continuously resided together with the children on the reservation for approximately three years prior to the filing of the district court divorce action, that the separation occurred on the reservation, and that Marilynn and one of the children presently reside on the reservation. The Tribe also has an available forum to adjudicate child custody and support claims between non-Indians and Indians. Section 5–201 of the Standing Rock Sioux Tribe Code of Justice provides:

"5–201. *Jurisdiction over annulment and divorce cases.*

"The Court shall have jurisdiction over annulment, divorce and any paternity, child custody, division of property, child support or alimony decree pursuant to such annulment or divorce, where at least one party to the marriage is an Indian, and at least one party has been a bona fide resident within the boundaries of the Standing Rock Sioux Indian Reservation as defined by the Act of May 31, 1889, c. 405, 25 Stat. 888 for a period of one year immediately preceding the filing of the action."

It has not been suggested that the tribal court is not functioning in the area of domestic relations law. Indeed, the Tribe, through its tribal court, has manifested an interest in adjudicating the disputes between these parties. Although the numerous tribal court orders and filings on March 13, 1986, technically may not have constituted an action for divorce under tribal law, Raphael's district court divorce complaint sought relief contrary to that granted by the tribal court in its order awarding temporary custody of the three children to Marilynn.

The Standing Rock Sioux Indian Tribe has its own tribal code, divorce code, and tribal court, which had issued a temporary order placing custody of the three children with Marilynn. The parties were married and lived together on the reservation with the children up until the time of separation. We believe that under these circumstances, the district court's exercise of jurisdiction over child custody and support in Raphael's divorce action "infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee, supra,* 358 U.S. at 220, 79 S.Ct. at 271. *See also Martinez v. Superior Court, La Paz County,* 152 Ariz. 300, 731 P.2d 1244, 1246 (Ct.App.1987) ["In this case, the mari-

tal domicile was on the reservation; the children were conceived on the reservation; separation occurred on the reservation; and the respondent lives on the reservation, so the transaction out of which the suit arose occurred on the reservation and is within the jurisdiction of the tribal court."].

■ Raphael contends, however, that events material to the custody and support claims occurred off the reservation and within this state to justify the district court's exercise of subject matter jurisdiction. Raphael relies on the prior amended divorce judgment, which was never vacated and granted legal custody of the two boys to the paternal grandparents who are North Dakota residents, and the conception of the children off the reservation while the parties resided in the state from 1971 until they were remarried in 1983. We disagree.

Generally, when parties to a divorce remarry each other, the child custody provisions of the prior decree are nullified. *See* Annot., *Effect of remarriage of spouses to each other on child custody and support provisions of prior divorce decree*, 26 A.L.R. 4th 325 (1983). We recognize that some courts have carved out an exception to this general rule by holding that where the prior divorce decree places custody in a third party, a subsequent remarriage will not affect the third party's right to legal custody. *See In re Marriage of Helm*, 271 N.W.2d 725 (Iowa 1978); *Ex parte Heilman*, 176 Kan. 5, 269 P.2d 459 (1954), *cert. denied*, 348 U.S. 944, 75 S.Ct. 366, 99 L.Ed. 739 (1955); *Miller v. Powell*, 212 S.W.2d 876 (Tex.Civ.App.1948). However, all of the children in this case resided with their parents on the reservation without objection from the paternal grandparents for the three years of their parents' second marriage. In *Malaterre v. Malaterre, supra*, 293 N.W.2d at 142, we held that although a court having jurisdiction to hear a divorce action has continuing jurisdiction regarding the custody, care, and education of the children of the marriage, once the Indian mother and child in that case became residents of the reservation, the district court lost jurisdiction to modify the child custody provisions of the initial divorce decree.

Like the situation in *Malaterre v. Malaterre*, when the children in this case moved to the reservation with their parents, the district court lacked the power to enforce the provisions of the prior amended divorce judgment. We therefore deem the prior decree irrelevant for the purposes of determining whether the district court had subject matter jurisdiction to adjudicate custody and support in this divorce action.

While the events which occurred off the reservation prior to the parties' remarriage in 1983 might arguably be sufficient contacts with the state to provide a divorce court with personal jurisdiction over a nonresident spouse, these facts do not affect our conclusion that Raphael's custody and support claims are within the tribal court's exclusive subject matter jurisdiction. *See Fisher v. District Court, supra;* W. Canby, *Civil Jurisdiction and the Indian Reservation*, 1973 Utah L.Rev. 206, 227–229. All incidents giving rise to the custody and support issues in this action for dissolution of the second marriage occurred on the reservation.

We also disagree with Raphael's contention that *Three Affiliated Tribes v. Wold Engineering*, 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) [*Three Tribes I*], and *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed. 2d 881 (1986) [*Three Tribes II*], support the district court's assertion of jurisdiction in this case.

The Supreme Court in *Three Tribes II* held that Chapter 27–19, N.D.C.C. [Indian Civil Jurisdiction], was pre-empted by Public Law 280 [28 U.S.C. § 1360] to the extent that our state law disclaimed state court jurisdiction over actions by Indians against non-Indians for claims arising on a reservation where no other forum existed to litigate the matter. Because we had assumed state civil jurisdiction over actions between Indian plaintiffs and Indian defendants for conduct on an Indian reservation prior to the enactment of Chapter 27–19 [*see Vermillion v. Spotted Elk*, 85 N.W.2d 432 (N.D.1957)] and prior to the amendments to Public Law 280 adding tribal consent requirements [*see* Public Law 90–284, codi-

fied at 25 U.S.C. §§ 1321, 1322 and 1326], we could not thereafter decline to exercise jurisdiction in an action by an Indian against a non-Indian for a claim arising on the reservation and for which there was no other forum. We observed in *McKenzie County Social Services Bd. v. V.G., supra*, 392 N.W.2d at 402:

> "[N]othing in *Three Tribes II, supra*, suggests that Chapter 27–19, N.D.C.C., was pre-empted insofar as that chapter requires consent for jurisdiction in a case between Indians for conduct on the reservation. If there is an available forum in the tribal court, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise. *See Three Tribes II, supra; Three Tribes I, supra.*"

Likewise, Chapter 27–19, N.D.C.C., is not pre-empted insofar as it requires consent for state jurisdiction in an action brought by a non-Indian against an Indian for conduct on the reservation. Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. *Iowa Mutual Ins. Co. v. La-Plante*, 480 U.S. 9, 20, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987). The Tribe has not consented to the exercise of state court jurisdiction under these circumstances and, as we have noted, there is an available forum in tribal court. The district court's exercise of jurisdiction to resolve these disputes over child custody and support, which were within the province of the tribal court, would impinge upon the Tribe's right to adjudicate controversies arising within it. *R.J. Williams Co. v. Fort Belknap Housing Auth., supra.*

■ Raphael asserts that his due process and equal protection rights would be violated if he were denied the use of the state courts to determine custody and support of the children. His argument is mainly premised upon the alleged incompetence of tribal courts. We disagree. Similar attacks on tribal court jurisdiction have been rejected in the past. *E.g., Iowa Mutual Ins. Co. v. LaPlante, supra*, 480 U.S. at 19, 107 S.Ct. at 978. "[T]he Indian Civil Rights Act, 25 U.S.C. § 1302, provides non-Indians with various protections against unfair treatment in the tribal courts." *Iowa Mutual Ins. Co. v. LaPlante, supra.*

Moreover, denying Raphael the opportunity to sue Marilynn over custody and support of their children in state court under these circumstances raises no cognizable equal protection claim. If a jurisdictional holding results in denying a non-Indian plaintiff a state court forum in an action against an Indian which arises on the reservation and is therefore within the tribal court's exclusive jurisdiction, "such disparate treatment of the Indian is justified because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government." *Fisher v. District Court, supra*, 424 U.S. at 391, 96 S.Ct. at 948. *See also Washington v. Washington State, Etc.*, 443 U.S. 658, 673 n. 20, 99 S.Ct. 3055, 3068 n. 20, 61 L.Ed.2d 823 (1979); *Washington v. Confederated Bands and Tribes*, 439 U.S. 463, 499–502, 99 S.Ct. 740, 760–762, 58 L.Ed.2d 740 (1979); *Morton v. Mancari*, 417 U.S. 535, 554–555, 94 S.Ct. 2474, 2484–2485, 41 L.Ed.2d 290 (1974).

Likewise, the trial court's statement that a denial of state court jurisdiction would subject non-Indian spouses of Indian persons to tribal court jurisdiction without the benefit of Indian citizenship, while no doubt an accurate observation of the effect of *Williams v. Lee* in any civil case arising on an Indian reservation, is certainly not a valid reason for finding no infringement upon tribal self-governance in this case.

We conclude that the district court lacked subject matter jurisdiction over Raphael's child custody and support claims. Accordingly, the divorce judgment is reversed insofar as it awards Raphael custody of the children and orders Marilynn to pay support. The judgment is otherwise affirmed.

ERICKSTAD, C.J., and MESCHKE, J., concur.

VANDE WALLE, Justice, concurring in result.

I concur in the result but only on the narrow ground that the orders and filings

of March 13, 1986, in tribal court should be recognized as prior in time to the divorce action instituted in district court on March 14, 1986. Because they were first in time I believe the district court should have deferred to the proceedings in the tribal court. I do not believe it is necessary to conclude, as does the majority opinion, that "If a jurisdictional holding results in denying a non-Indian plaintiff a state court forum in an action against an Indian which arises on the reservation and is therefore within the tribal court's exclusive jurisdiction, 'such disparate treatment of the Indian is justified because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government.'" I would leave to another day the issue of the application of that statement to this type of proceeding.

GIERKE, J., concurs.