MR. JUSTICE SHEA
delivered the opinion of the Court.
Petitioner Shellyann Flammond appeals a ruling of the Glacier County District Court dismissing, for lack of jurisdiction, an action seeking to enforce child support payments under Montana’s Uniform Reciprocal Enforcement of Support Act (URESA), Title 40, Chapter 5, MCA. Having determined that the District Court lacked both subject matter over the transaction and personal jurisdiction over the respondent, we affirm.
Lloyd Flammond is an enrolled member of the Blackfeet Tribe. Shellyann Flammond is not. They were married on March 25, 1976 in Long Beach, California, and then moved to Babb, Montana, which is located within the boundaries of the Blackfeet Reservation. On August 5, 1976, their only child, Susie Renee Flammond, was born to them. In November of the same year, the couple separated. Mother and child moved to California and established residence there. The father remained on the reservation where he still resides.
*352 In 1977 the mother filed a petition under California’s URESA seeking monthly child support payments of $320 from the father. The County of Los Angeles, from whom the mother was receiving public aid for the child, joined the petition. The California Superior Court for the County of Los Angeles found that the father owed a duty of support and ordered the petition sent to Glacier County District Court in Montana for the filing of an enforcement action under the provisions of Montana’s URESA, section 40-5-101 et seq., MCA.
The Montana court issued an order for the father to show cause why he should not be required to make support payments under the Montana Act. A Glacier County Deputy Sheriff served the show cause order on the father within the boundaries of the Blackfeet Reservation. The father moved to dismiss on grounds that the District Court lacked personal and subject matter jurisdiction and that service of process was insufficient. The District Court granted the motion. Finding, inter alia, that none of the acts of nonsupport alleged in the petition had occurred in Montana, the court concluded that it lacked subject matter jurisdiction.
Where, as here, neither the state nor the tribe has complied with the current federal enabling statutes, 25 U.S.C. §§ 1321-1326, regulating the extension of state civil and criminal jurisdiction to Indian reservations, Montana may not exercise subject matter jurisdiction over transactions arising on Indian reservations (see Blackwolf v. District Court (1972), 158 Mont. 523, 493 P.2d 1293; Kennerly v. District Court (1971), 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507), unless the transaction entails “significant” or “substantial” contacts with the state outside of reservation boundaries. Crawford v. Roy (1978), 176 Mont. 227, 577 P.2d 392, (action to recover payments for services rendered to Indian attorney both on and off the reservation where the employment contract was entered into off the reservation); Little Horn State Bank v. Stops (1976), 170 Mont. 510, 555 P.2d 211, cert. den. Stops v. Little Horn State Bank (1977), 430 U.S. 904, 97 S.Ct. 1171, 51 L.Ed.2d 580 (where Indian parties had obtained loans off the reservation but within Montana); State ex rel. Old Elk v. District Court *353 (1976), 170 Mont. 208, 552 P.2d 1394, (where the reservation Indian was a suspect in an off-reservation shooting); Bad Horse v. Bad Horse (1974), 163 Mont. 445, 517 P.2d 893, cert. den. 419 U.S. 847, 95 S.Ct. 83, 42 L.Ed.2d 76 (where the Indian couple had been married off the reservation); See also, Fisher v. District Court (1976), 424 U.S. 382, 389 n. 14, 96 S.Ct. 943, 948 n. 14, 47 L.Ed.2d 106; De Coteau v. District Court (1975), 420 U.S. 425, 429 n. 3, 95 S.Ct. 1082, 1085 n. 3, re L.Ed.2d 300, reh. den. 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95. Nowhere does either Title IV of the Social Security Act, 42 U.S.C. § 601 et seq., or the regulations promulgated under it affirmatively authorize the states by means of URESA legislation to assume jurisdiction over reservation Indians who have neglected to provide support for their dependents.
Here there are absolutely no off-reservation acts in Montana sufficient to vest state courts with jurisdiction over the respondent, a reservation Indian. The only off-reservation acts occurred in California. It is well-settled that a reservation Indian’s domicile on the reservation is not an in-state contact which grants jurisdiction to state courts. Fisher v. District Court (1976), supra; Kennerly v. District Court (1971), supra; Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251.
As a prerequisite to in personam jurisdiction, the forum state and the party over whom jurisdiction is sought must be linked by certain “minimum contacts . . . such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice. ’ ” International Shoe v. Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, quoting Miliken v. Meyer (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278. Here the respondent father has injured neither persons nor property within the State of Montana. The cause of action to enforce support payments arises solely from his domestic relations. The controversy is the out-growth of a separation that did not occur within Montana’s territorial jurisdiction and that was not otherwise connected with this state. Under essentially the same *354 constellation of facts, the United States Supreme Court has held that a state’s assertion of personal jurisdiction- would be both unreasonable and impermissible. Kulko v. California Superior Court (1978), 436 U.S. 84, 96-97, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 143, reh. den. 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150; See also, Rule 4(B), M.R.Civ.P. The District Court had no basis to assert personal jurisdiction over the respondent.
Contrary to the mother’s contentions, Natewa v. Natewa (1972), 84 N.M. 69, 499 P.2d 691, does not support state jurisdiction in this case. There the New Mexico Supreme Court found state jurisdiction over the URESA action brought by a non-Indian Wisconsin plaintiff against her Indian husband living on the Zuni Reservation. Citing Daly v. Daly (1956), 21 N.J. 599, 123 A.2d 3, the New Mexico court stated that “all that was needed for proper jurisdiction” under URESA was “the presence of the husband or father in the responding state, the presence of the wife or child in another state, and the existence of a duty of support on the part of the father under the laws of the responding state.” 499 P.2d at 693. In Natewa, the husband was clearly “present” in the responding state (New Mexico) for as the court held, he had submitted to state jurisdiction when he voluntarily appeared in lower court proceedings. 499 P.2d at 693.
In this case, however, the father has challenged state court jurisdiction from the outset. He has not acquiesced in state jurisdiction so as to give the Montana court in personam jurisdiction over him. He cannot be said to be “present” within the responding state, for the reservation is clearly beyond the territorial jurisdiction of the Montana courts. See, Kennerly v. District Court, supra.
Similarly, there exists no duty to support on the part of the father in Montana. For, as we have determined, the Montana courts do not have subject matter jurisdiction over the transaction in question.
It is not our purpose here to deny Ms. Flammond a forum. We have no choice but to apply the law as it has been declared by the United States Supreme Court. In his brief and at oral argument, *355 respondent vigorously contended that the tribal court would provide a fair and viable forum for the judicial enforcement of child support obligations. In recent years, American Indian tribes have strived to become independent and responsible government entities. There is every reason to hope, therefore, that the Blackfeet Tribe will afford the petitioning wife a viable remedy in its courts. Should tribal governments prove uncooperative or should their courts discriminate against non-Indian plaintiffs, they run the risk of eventual Congressional legislation that could deprive them of much of the autonomy they have struggled so long to achieve.
It appears that there is no appeal from a tribal court ruling to the federal court system. See Wells v. Philbrick (1980), 486 F.Supp. 807, 809 and n. 2; 25 U.S.C. § 1303. However, that is not an argument in favor of state court jurisdiction. A state may simply not extend its jurisdiction by judicial fiat no matter how compelling the policy considerations for doing so may seem if there is no legal basis to support state jurisdiction. If a remedy other than tribal court is to exist, Congress must provide it.
The judgment of the District Court is affirmed.
MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEEHY concur.