No.   90-103

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JEROME FIRST, JR.,

     Petitioner and Respondent,

  v.

STATE OF MONTANA, DEPARTMENT OF
SOCIAL AND REHABILITATION SERVICES,
EX REL., FAITH LAROCHE,

     Respondent and Appellant.

RECEIVED

MAR 1 9 1991

ED SMITH
Clerk of Supreme Court
State of Montana

APPEAL FROM:  District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          K. Amy Pfeifer, Child Support Enforcement Division,
          Helena, Montana

     For Respondent:

          Rene A. Martell and D. Michael Eakin, Montana Legal
          Services, Wolf Point, Montana

     For Amicus Curiae:

          Reid Peyton Chambers, Sonosky, Chambers & Sachse,
          Washington, D.C.

          Terry Spear, Matovich, Addy & Keller, Billings,
          Montana

          Ronald S. Luedemann and Lucille G. Meis, United
          States Department of Health & Human Services,
          Denver, Colorado

FILED

MAR 1 9 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

                    Heard:  January 23, 1991
             Submitted:  February 7, 1991
              Decided:  March 19, 1991

Filed:

_____
                  Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The State of Montana, Department of Social and Rehabilitation Services, ex rel., Faith LaRoche, appeals an order of the First Judicial District, Lewis and Clark County, which held that a Montana administrative tribunal had no subject matter or personal jurisdiction to utilize income withholding proceedings against Montana unemployment insurance benefits payable to Jerome First, Jr., an enrolled member of the Fort Peck Tribes residing on the Fort Peck Indian Reservation, for payment of a previously court-ordered child support obligation. This District Court order reversed an income withholding fair hearing decision and order of the State of Montana Child Support Enforcement Division. We reverse the District Court's order.

Appellant raises the following issue:

May Montana utilize its income withholding procedure against off-reservation income payable to an Indian, who resides on a reservation in Montana, to enforce a court-ordered child support obligation?

## FACTS AND PROCEDURE

Jerome First, Jr., married Faith First (now Faith LaRoche) in Reno, Nevada in March, 1966. After their marriage, the couple resided on the Rosebud Indian Reservation in South Dakota. The marriage produced three children. In 1971, the couple separated; Mr. First, Jr., returned to his home on the Fort Peck Indian

2

Reservation in Montana. On January 20, 1972, a South Dakota state court issued a divorce decree to the couple. The divorce decree awarded Ms. LaRoche sole custody of the children and ordered Mr. First, Jr., to pay Ms. Laroche $50.00 per month per child as child support.

On August 18, 1986, Ms. LaRoche executed a power of attorney, which appointed the Office of Child Support Enforcement of the South Dakota Department of Social Services (OCSE) her attorney-in-fact to enforce and collect past, current, and future child support owed by Mr. First, Jr. On April 27, 1988, OCSE executed an authorization to act as agent in interstate case, as Mr. First, Jr., was still residing on the Fort Peck Reservation in Montana at this time. This document authorized the State of Montana, Department of Social Rehabilitation Services, Child Support Enforcement Division (CSED) to act as South Dakota's agent to collect child support owed to Ms. LaRoche. In turn, CSED sought to give full faith and credit to the child support order of the state court of South Dakota.

On May 11, 1988, Ms. LaRoche executed an affidavit detailing the amount of child support she had received from Mr. First, Jr. Ms. LaRoche's affidavit stated that she received $3,185.32 in child support payments directly from Mr. First, Jr., from February, 1972, to August, 1986. This affidavit further stated that Ms. LaRoche received $1,431.62 in child support payments from August, 1986, to April, 1987, through the collection efforts of South Dakota's OCSE.

3

Therefore, according to the affidavit, as of May 11, 1988, Mr. First, Jr., owed Ms. LaRoche $21,433.06 in past child support payments and owed $50.00 per month in future child support payments for Christopher N. First, who would not emancipate until June 6, 1989.

On November 23, 1988, Montana's CSED issued a notice of intent to withhold income, under 42 U.S.C. § 666(b) and §§ 40-5-401, et seq., MCA, against Montana unemployment insurance benefits payable to Mr. First, Jr.[1] Mr. First, Jr., was duly served a copy as required under § 40-5-413, MCA. In response to this notice, Mr. First, Jr., filed a request for hearing with CSED on December 1, 1988. At the January 5, 1989, telephonic hearing, Mr. First, Jr.'s attorney argued that, because Mr. First, Jr., was an enrolled member of the Fort Peck Tribes and had no contacts off the Fort Peck Indian Reservation where he was living, CSED had no jurisdiction to enforce his child support obligation. Moreover, Mr. First, Jr.'s attorney argued that the Fort Peck Tribal Court had exclusive jurisdiction over this matter.

On April 3, 1989, a CSED hearings officer ordered that CSED was authorized to issue an order to withhold income, determining that Mr. First, Jr., failed to establish that CSED's jurisdiction, 1) was preempted by federal treaty or statute, 2) would interfere with the Fort Peck Tribe's self-government, or, 3) would interfere

---

[1]Mr. First, Jr.'s Montana unemployment insurance benefits were based on employment both on and off the reservation.

with the Fort Peck Tribal Court's jurisdiction in income withholding cases.

On May 4, 1989, Mr. First, Jr., petitioned for judicial review of this order to the District Court. The District Court reversed the order in a decision dated November 21, 1989, holding that Montana did not "have subject matter or personal jurisdiction sufficient to allow it to exercise its administrative withholding procedures in this case." From this decision, the State of Montana, Department of Social and Rehabilitation Services appeals.

Following the filing of this appeal, on June 21, 1990, the State of South Dakota Department of Social Services issued an order for withholding of income to the Bureau of Indian Affairs against Mr. First, Jr., to enforce his child support obligation. On June 24, 1990, Mr. First, Jr., assigned the Montana Department of Family Services fifty percent of his future right to Montana unemployment insurance benefits for payment of his child support obligation. Based on these two developments, on July 20, 1990, Mr. First, Jr., moved this Court to dismiss this appeal on the grounds of res judicata and mootness. On September 13, 1990, this Court dismissed this motion.

## ANALYSIS

May Montana utilize its income withholding procedure against off-reservation income payable to an Indian, who resides on a

5

reservation in Montana, to enforce a court-ordered child support obligation?

In the past, this Court has held that Montana tribunals lack subject matter and personal jurisdiction in cases involving Indian litigants and child support actions when there are no established off-reservation acts. See Flammond v. Flammond (1980), 190 Mont. 350, 621 P.2d 471; State ex rel. Three Irons v. Three Irons (1980), 190 Mont. 360, 621 P.2d 476. Here, however, we are presented with a case of first impression, as this is a child support enforcement action, with Indian litigants, involving an income withholding proceeding against off-reservation income in the form of Montana unemployment insurance benefits. The District Court held that the Montana administrative tribunal needed and lacked subject matter and personal jurisdiction to enforce Mr. First, Jr.'s child support obligation through utilizing the federally mandated income withholding proceeding against his off-reservation income. We disagree.

In order for a tribunal to have jurisdiction over a particular action, the tribunal must have subject matter jurisdiction, and, either jurisdiction over the person if the action is in personam, or, jurisdiction over the res, if the action is in rem or quasi in rem. R. Casad, Jurisdiction in Civil Actions (1983, Supp. 1986), § 1.01.

6

1. Montana's tribunals have subject matter jurisdiction to issue and enforce an order to withhold income against Montana unemployment insurance benefits payable to an Indian, who resides on a reservation in Montana.

Subject matter jurisdiction is a tribunal's power "'to hear and determine'" a certain type of controversy. Standard Oil Co. v. Montecatini Edison S.p.A. (D.C. Del. 1972), 342 F. Supp. 125, 129-30 (citation omitted). This Court, in State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 512 P.2d 1292, established a three-part test to determine subject matter jurisdiction in a matter involving an Indian, enrolled in a tribe and residing on a reservation:

> (1) whether the federal treaties and statutes applicable have preempted state jurisdiction;
>
> (2) whether the exercise of state jurisdiction would interfere with reservation self-government; and
>
> (3) whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction.

Iron Bear, 162 Mont. at 346, 512 P.2d at 1299.

In 1980, the United States Supreme Court addressed the issue of subject matter jurisdiction regarding Indian tribes and tribal members in White Mountain Apache Tribe v. Bracker (1980), 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665:

> Although "[g]eneralizations on this subject have become . . . treacherous," [citation omitted], our decisions establish several

7

basic principles with respect to the boundaries between state regulatory authority and tribal self-government. Long ago the Court departed from Mr. Chief Justice Marshall's view that "the laws of [a State] can have no force" within reservation boundaries. [Citations omitted.] At the same time we have recognized that the Indian tribes retain "attributes of sovereignty over both their members and their territory." [Citations omitted.] As a result, there is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members.

. . .

Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art 1, § 8, cl 3. [Citation omitted.] This congressional authority and the "semi-independent position" of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be pre-empted by federal law. [Citations omitted.] Second, it may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." [Citations omitted.] The two barriers are independent because either, standing alone, can be sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members. They are related, however, in two important ways. The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. Even so, traditional notions of Indian self-government are so deeply engrained in our jurisprudence that they have provided an important "backdrop," [citation omitted], against which vague or ambiguous federal enactments must always be measured.

White Mountain Apache Tribe, 448 U.S. at 141-43 (emphasis added).

Issues concerning jurisdiction of state courts involving

8

matters within exterior boundaries of federally recognized Indian reservations and members of the organized tribes of such reservations are subject to control by the United States Congress and the federal courts. The decision of the United States Supreme Court in White Mountain Apache Tribe followed our decision in Iron Bear by nearly seven years. In adjudicating jurisdictional matters involving Indian tribes and tribal members, the United States Supreme Court is the final authority. Therefore, the more recent test set forth in White Mountain Apache Tribe is the test to be applied, and for such reason, we are adopting this test. Accordingly, here, we must determine whether: 1) the assertion of subject matter jurisdiction by Montana's administrative and judicial tribunals is preempted by federal law, and 2) the assertion of subject matter jurisdiction by Montana's administrative and judicial tribunals would unlawfully infringe on Fort Peck Indian Reservation's right to makes its own laws and be ruled by these laws.

When examining possible federal preemption, the test, when off-reservation income payable to an Indian is involved, "call[s] for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." White Mountain Apache Tribe, 448 U.S. at 145. Here, the exercise of state authority over this matter would not violate any existing federal law or treaty.

9

Moreover, the assertion of subject matter jurisdiction by Montana's tribunals promotes established federal law as well as its underlying policy. Federal law, 42 U.S.C. §§ 601, et seq., mandates states, such as Montana, that participate in Aid to Families with Dependent Children (AFDC), to enact and enforce a child support enforcement plan that conforms with its requirements as well as regulations promulgated by the United States Department of Health and Human Services. In particular, 42 U.S.C. §§ 666(a)(1) and (b), and 45 C.F.R. § 303.100 (1989) mandate these participating states to enact and enforce income withholding proceedings to collect outstanding child support owed by parents absent from the jurisdiction wherein the child support obligation is owed. Compare §§ 40-5-401, et seq., MCA. Furthermore, 42 U.S.C. § 654(19) and 45 C.F.R. § 302.65 (1989) mandate participating states to enforce unpaid child support obligations through an unemployment compensation intercept program. Compare § 39-51-3106, MCA. If a participating state fails to comply with the requirements under 42 U.S.C. §§ 601 et seq., and the promulgated regulations, the Secretary of Health and Human Services may impose financial sanctions to the state. See 42 U.S.C. § 603(h) and 45 C.F.R. § 305.100 (1989).

Accordingly, Montana, as a participating state, is required by federal law to enforce child support obligations by withholding the obligor's income, including unemployment insurance benefits, through methods including income withholding proceedings.

10

Compliance with these federal mandates results in Montana receiving federal funding for a certain percentage of Montana's costs associated with establishing and enforcing child support obligations owed by absent parents. Besides the possible financial sanctions against Montana, if Montana's tribunals were not allowed to utilize income withholding proceedings against off-reservation income payable to absent Indian parents, Montana's recovery of AFDC benefits provided to children whose absent parents are Indian would be negatively affected. This would also affect non-AFDC children whose parents are Indian, such as Mr. First, Jr.'s and Ms. LaRoche's children, as they would be deprived of the income that would directly be given to them by CSED through income withholding proceedings. Clearly this result would be contrary to the federal law's underlying policy of ensuring that absent parents take responsibility for their children by financially supporting them, which accordingly reduces the welfare ranks. U.S. Dept. of Health and Human Services, Office of Child Support Enforcement, Handbook of Child Support Enforcement (Sept. 1989).

Furthermore, 42 U.S.C. §§ 601 et seq., are federal statutes of general application, and as such, apply to all residents of the United States as well as their property. Federal Power Commission v. Tuscarora Indian Nation (1960), 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed.2d 584, 596. In the case of Donovan v. Coeur d'Alene Tribal Farm (9th Cir. 1985), 751 F.2d 1113, the court carved out three exceptions to this rule:

11

A federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations. . . ." [Citations omitted.]

Donovan, 751 F.2d at 1116.

Here, the federal law does not affect Fort Peck Tribe's exclusive right of self-governance in a purely intramural matter, which will be more thoroughly discussed below. No federal treaty exists which guarantees the Fort Peck Tribe the exclusive right to collect child support from absent parents by means of income withholding. And, the legislative history of 42 U.S.C. §§ 601, et seq., does not reflect that Congress intended to exclude Indians from this federal legislation. Therefore, with regard to the first prong of the White Mountain Apache Tribe test, we find no federal preemption here.

With regard to the second prong of the White Mountain Apache Tribe test, Montana's CSED assertion of subject matter jurisdiction over the income withholding proceeding against Mr. First, Jr., does not interfere with the Fort Peck Tribe's right to make its own laws and be ruled by these laws. Allowing Montana's tribunals to assert subject matter jurisdiction over this income withholding proceeding against Montana unemployment insurance benefits does not

12

prevent the Fort Peck Tribe from continuing to provide a forum for tribal members with regard to actions including adoptions, paternity, child support obligations, and garnishments. Moreover, allowing Montana tribunals to assert subject matter jurisdiction in such instances would benefit Fort Peck's tribal members by assisting Indian parents owed child support by absent parents with off-reservation income.

Mr. First, Jr., argues that the Fort Peck Tribe has exclusive jurisdiction over all civil matters involving its tribal members under the Comprehensive Code of Justice enacted by the Fort Peck Tribal Executive Board (Code). Mr. First, Jr., further argues that this matter is a domestic affair, or in other words, a "purely intramural matter" citing Donovan, supra, and accordingly, are ruled by tribal tradition and custom, under the Code.

The Code, in §§ 304(b) and 311, does provide for garnishment of wages for satisfaction of a child support obligation. The Code, however, does not provide for income withholding proceedings against a tribal member's off-reservation income to enforce a child support obligation. Therefore, the Fort Peck Tribal Court provides no remedy to Ms. LaRoche regarding the off-reservation income of Mr. First, Jr. Additionally, although this income withholding proceeding is for the purpose of enforcing a child support obligation, it is not a domestic affair, dominated by tribal tradition and custom; it is a collection action, and accordingly, not an area dominated by tribal tradition and custom. We therefore

13

hold that Montana's tribunals have subject matter jurisdiction over an income withholding proceeding against off-reservation income payable to an enrolled tribal member living on a reservation for payment of a child support obligation.

2. The initiation of income withholding proceedings against the unemployment compensation benefits is a quasi in rem action, and therefore, personal jurisdiction over Mr. First, Jr., is not required.

Quasi in rem jurisdiction is predicated on the existence of property within the territorial jurisdiction of the forum state. Hanson v. Denckla (1958), 357 U.S. 235, 247 n. 12, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283, 1293. In particular, a form of quasi in rem jurisdiction known as attachment jurisdiction, is a case where a judgment creditor seeks to seize property located within the forum state as payment to enforce a pre-existing claim unrelated to the property, in other words, a collection action. Id. See also Restatement 2d of Judgments, § 8 (1982). Administrative income withholding proceedings require Montana to exercise jurisdiction over the res, or thing, and not the person. Therefore, an administrative income withholding proceeding, a collection action, is a quasi in rem action, and here, jurisdiction is not based on the presence of Mr. First, Jr., in Montana, but rather, that the unemployment insurance benefits to be seized are within the territorial limits of Montana.

14

Prior to Shaffer v. Heitner (1977), 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683, presence of the property to be seized was sufficient to allow a state to exercise in rem and quasi in rem jurisdiction. Harris v. Balk (1905), 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023. But in the case of Shaffer, the Court held that actions in rem and quasi in rem are subject to the same test required for in personam actions: 1) the defendant must be shown to have "minimum contacts" with the forum state, and, 2) a grant of jurisdiction to the forum state must provide substantial justice.[2] Shaffer, 433 U.S. at 207.

A footnote in Shaffer, however, states that, where the action is to enforce an already determined debt, the defendant's "minimum contacts" with the forum state are not at issue. Shaffer, 433 U.S. at 210 n. 36. See also Rich v. Rich (1978), 402 N.Y.S.2d 767; Berger v. Berger (Vt. 1980), 417 A.2d 921; Huggins v. Dienhard (Az. 1982), 654 P.2d 32; State ex rel. Dep't of Revenue v. Control Data Corp. (Or. 1986), 713 P.2d 30. Here, because this action is to enforce an already determined debt, an outstanding child support obligation, Mr. First, Jr.'s "minimum contacts" are not at issue. However, even if Mr. First, Jr.'s "minimum contacts" were at issue, Mr. First, Jr., clearly established "minimum contacts" with the

---

[2]This test originated in the landmark case of International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

State of Montana by accepting Montana unemployment insurance benefits, benefits governed under §§ 39-51-101, _et seq._, MCA.

Finally, allowing Montana tribunals to assert jurisdiction here would provide substantial justice as the children of Mr. First, Jr., and Ms. LaRoche would benefit from the support of their absent parent. We therefore hold that Montana tribunals have _quasi in rem_ jurisdiction over this collection action against Mr. First, Jr. Because we have concluded that Montana tribunals have both subject matter and _quasi in rem_ jurisdiction here, we hold that Montana may utilize its income withholding proceeding against Mr. First, Jr.'s Montana unemployment insurance benefits, thereby reversing the District Court's order.

Reversed.

_____
Chief Justice

We concur:

_____
_____
_____

16

_____

_____
Justices

Justice Terry N. Trieweiler, dissenting:

I respectfully dissent from the Opinion of the majority.

The only issue raised by the appellant on appeal was set forth by the appellant as follows:

> Whether the State of Montana, Department of Social and Rehabilitation Services, Child Support Enforcement Division has jurisdiction to initiate administrative income withholding proceedings against State of Montana unemployment insurance benefits payable to Jerome First, Jr. an enrolled member of the Fort Peck tribes residing on the Fort Peck Indian Reservation in payment of a previously ordered child support obligation.

The District Court found, based upon this Court's previous decisions in State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 512 P.2d 1292 and State et al. v. Flammond v. Flammond (1980), 190 Mont. 350, 621 P.2d 471, that the State had neither personal nor subject matter jurisdiction in this case.

On appeal, the State argued, and this Court has now agreed that it had quasi in rem jurisdiction because it had jurisdiction over the unemployment benefits which were paid to Jerome First by the State of Montana. For that reason, the State's position was that personal jurisdiction was unnecessary. In fact, the State has never claimed in any of the proceedings in the District Court that it had personal jurisdiction over the petitioner.

The District Court's decision was entered on November 21, 1989 and the State's notice of appeal was filed on January 18, 1990.

On June 24, 1990, prior to oral argument or any decision in this case, First gave a non-revocable assignment of his unemployment benefits to the Montana Department of Family Services. He had also obtained employment and was having his income withheld

to meet his child support obligation pursuant to an order of a South Dakota court. He did not contest the jurisdiction of the South Dakota court to collect support. At that point there were no further unemployment benefits to be withheld pursuant to any order of the District Court or this Court.

Other than the unemployment benefits, there is no known basis for the State's assertion of quasi in rem jurisdiction at either the present time or in the future.

For these reasons, First moved to dismiss the State's appeal for the reason that it is moot.

It is a well-established rule that this Court does not exist for the purpose of issuing advisory opinions which have no practical impact on the parties, and that this Court will not hear cases that have become moot. Adkins v. City of Livingston (1948), 121 Mont. 528, 194 P.2d 238. In fact, this Court has in the past shown such an aversion to deciding moot issues that it has dismissed appeals for mootness on its own initiative. Montana Power Co. v. Charter (1977), 173 Mont. 429, 568 P.2d 118.

In response to First's motion to dismiss, the State asked this Court to expand the issue that it had originally raised and determine that it had jurisdiction to withhold income from successive payors without any suggestion of who they might be or where they are located.

First's motion was dismissed without explanation. Other than by passing reference neither is the issue of mootness discussed in the majority's Opinion.

I disagree with the majority Opinion first of all because the issue it decided was moot and this Court is not in a position to speculate whether quasi in rem jurisdiction will exist in the future without knowing the nature or location of the income in question.

I also dissent for the reason that this Court's decision ignores previous precedent which I believe controls the outcome in this case and which was correctly applied by the District Court.

The appellants' briefs and the majority Opinion dedicated considerable space to the fact that First was delinquent in child support payments and that the federal government threatens to withhold welfare funds from states which do not cooperate in the collection of delinquent child support payments. However, the proper issue in this case is not whether First is a satisfactory parent, and it has nothing to do with the myriad of bureacratic regulations imposed by the federal government. Certainly the State of Montana cannot be punished for its failure to collect child support payments when it has no lawful authority for doing so.

The only issue properly before this Court is whether based on prior decisions of this Court, the State of Montana could exercise jurisdiction over the petitioner Jerome First, Jr. Clearly it could not.

In State ex rel. Flammond v. Flammond (1980), 190 Mont. 350, 621 P.2d 471, we dealt with nearly identical facts and found that the courts of this state had no jurisdiction to enforce child support payments.

In _Flammond_, the father was an enrolled member of the Blackfeet tribe residing within the boundaries of the Blackfeet Reservation. His former spouse resided in California where she received public support for their child.

Under California's Uniform Reciprocal Enforcement of Support Act, a California court found that the father owed a duty of support and ordered a petition sent to the Glacier County District Court in Montana for filing of an enforcement action under the provisions of Montana's Uniform Reciprocal Enforcement of Support Act (URESA) at § 40-5-101, et seq., MCA.

In that case, the father moved to dismiss on the grounds that the court lacked personal and subject matter jurisdiction and we affirmed. In doing so, we made the following observations which are relevant in this case:

> Here there are absolutely no off-reservation acts in Montana sufficient to vest state courts with jurisdiction over the respondent, a reservation Indian. The only off-reservation acts occurred in California. It is well settled that a reservation Indian's domicile on the reservation is not an in-state contact which grants jurisdiction to state courts. Fisher v. District Court (1976), supra; Kennerly v. District Court (1971), supra; Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251.

621 P.2d at 471.

> Similarly, there exists no duty to support on the part of the father in Montana. For, as we have determined, the Montana courts do not have subject matter jurisdiction over the transaction in question.

621 P.2d at 474.

Maybe the most important observation in the _Flammond_ decision for purposes of this discussion was the following:

21

. . . A state may simply not extend its jurisdiction by judicial fiat no matter how compelling the policy considerations for doing so may seem if there is no legal basis to support state jurisdiction. If a remedy other than tribal court is to exist, Congress must provide it.

621 P.2d at 474.

This Court arrived at a similarly indistinguishable decision in State ex rel. Three Irons v. Three Irons (1980), 190 Mont. 360, 621 P.2d 476.

The majority Opinion distinguishes Flammond and Three Irons by the fact that this case is concerned with unemployment insurance benefits. However, as previously noted, this case is no longer concerned with unemployment insurance benefits, because there are none, and if any accrue in the future the petitioner has signed an irrevocable assignment of those rights to the Child Support Enforcement Division. The only real difference between this case and the previous decisions is that in this case the United States government filed an amicus brief threatening to withhold federal funding unless we bend Montana law to suit its purposes. However, those threats are neither credible nor relevant.

Instead of basing its decision on previous decisions in this Court, the majority chose to base its decision on White Mountain Apache Tribe v. Bracker (1980), 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665. However, under that decision, Montana cannot assert subject matter jurisdiction where to do so would infringe on the Fort Peck Indian Reservation's right to make its own laws and be ruled by those laws. That is exactly what this Court's decision does.

22

The Comprehensive Code of Justice enacted by the Fort Peck Tribal Executive Board does provide for a method of enforcing and satisfying child support obligations. What this Court's decision says is that if the method provided is not satisfactory to the State of Montana, then the State is free to substitute its system of collection for the tribal system. That is not consistent with the White Mountain Apache test.

In a portion of the White Mountain Apache Tribe decision which is not discussed by the majority, the United States Supreme Court stated:

> When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging self-government is at its strongest.

488 U.S. at 144.

According to the White Mountain Apache Tribe decision, the majority's decision is objectionable because it interferes with efforts by the tribe to govern themselves in the area of child support. Those efforts should be encouraged, not frustrated at the behest of the federal government.

For these reasons, I would affirm the District Court and find that the State of Montana has neither personal jurisdiction over the petitioner nor subject matter jurisdiction in this case.

_____
Justice

23