[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 7, 1997
The defendant's motion to dismiss this action for lack of subject matter jurisdiction is granted on the ground that a Mashantucket tribal member living on the reservation is not a resident of Connecticut for purposes of General Statutes §46b-44. CT Page 5059
I. Factual and Procedural History
On November 1, 1995, the plaintiff, Marilyn Charles (hereinafter the "plaintiff") filed a complaint for dissolution of marriage against Owen Charles (hereinafter the "defendant") in the judicial district of New London at New London.[1] The plaintiffs complaint alleges 1) that the plaintiff is a resident of Rhode Island, and that the defendant has continuously resided in Connecticut "for at least 12 months next preceding the date of the filing of this Complaint," 2) that the marriage between the two parties has broken down irretrievably, and 3) that the marriage has produced one minor child. The plaintiffs complaint requests various relief including alimony, temporary and permanent. custody of the minor child, child support, temporary and permanent, counsel fees, and equitable distribution of property.[2]
On November 22, 1995, the defendant filed an answer and cross-complaint. The defendant's cross-complaint alleges, inter alia, the following facts: 1) the parties were married in New Haven. Connecticut, on December 18, 1983 2) the defendant is "a resident and member of the Mashantucket Pequot Tribal Nation, Mashantucket, Connecticut;" 3) the marriage has broken down irretrievably with no hope of reconciliation; and 4) the marriage has produced one minor child. The defendant requests that this court dissolve the marriage, grant joint custody, bestow primary residence of the minor child in the Mashantucket Pequot Tribal Nation, and render a fair and equitable division of the personal property.
On November 23, 1996, the defendant filed a motion to dismiss the complaint on the ground that the court lacked jurisdiction over the Person of the defendant and over the minor child.
On March 25, 1996, the court, Teller J., heard oral argument on the defendant's motion to dismiss for lack of personaljurisdiction, at the end of which the court denied the defendant's motion to dismiss asserting that "[u]nder the circumstances of this case, the Court does have jurisdiction and is willing to exercise that jurisdiction, and therefore accepts such jurisdiction to make custodial determinations in this case. The motion to dismiss is therefore denied in all respects as stated."[3][4]
CT Page 5060
On October 7, 1996, the defendant filed a dissolution of marriage action with the Mashantucket Pequot Tribal Court (hereinafter the "tribal court").[5] In conjunction with that action, the defendant also filed motions with the tribal court for custody and support of the minor child and payments of support from the plaintiff.
On October 29, 1996, the defendant, at the direction of new counsel, filed a motion to dismiss and/or stay proceedings on the ground that the court lacked jurisdiction and, alternatively, that the preceding should be stayed pending resolution of the tribal court action.
On March 10, 1997, this court denied the defendant's motion to stay the proceedings and ordered stricken the October 29, 1996 motion to dismiss, and ordered that the defendant file a new motion to dismiss.[6]
On March 24, 1997, the defendant filed a new motion to dismiss for lack of subject matter jurisdiction in compliance with the court's order dated March 10, 1997. On March 26, 1997, the plaintiff filed a memorandum in opposition to the defendant's motion to dismiss. On March 27, 1997, the court, Booth, J., heard oral argument on the defendant's motion to dismiss.[7]
II. Motion to Dismiss, Legal Standard
"A motion to dismiss . . . properly attacks the jurisdiction of the court . . ." Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The motion to dismiss shall also be used to assert . . . lack of jurisdiction over the subject matter . . ." (Internal quotation marks omitted.) Sadloski v. Town ofManchester, 235 Conn. 637, 645 n. 13, 668 A.2d 1314 (1995). "[I]n deciding a motion to dismiss, [the trial court] must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). However, "[a] ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action . . . [Rather,] [m]otions to dismiss are granted solely on jurisdictional ground[s]." (Citations omitted.) Discover Leasing,Inc. v. Murphy, 33 Conn. App. 303, 306-07, 635 A.2d 843 (1993).
III. Jurisdiction over Dissolution Proceedings CT Page 5061
It is a familiar principle that a court which exercises ". . . statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Citations omitted; internal quotation marks omitted.) Figueroav. C and S Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845 (1996). Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. (Citations omitted; internal quotation marks omitted.) Baldwin Piano and Organ Co. v. Blake, 186 Conn. 295,297, 441 A.2d 183 (1982).
General Statutes § 46b-1 provides in pertinent part that: "[m]atters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . dissolution of marriage, contested and uncontested . . ." General Statute § 46b-44 (a) provides in pertinent part:
 "[a] complaint for dissolution of a marriage or for legal separation may be filed at any time after either party has established residence in this state." [Emphasis added.] Furthermore, 46b-44 (c) provides that "[a] decree dissolving a marriage or granting a legal separation may be entered if: (1) [o]ne of the parties to the marriage has been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint or next preceding the date of the decree . . ." [Emphasis added.]
IV. Discussion
It is uncontested that the parties resided in Florida before their separation. The plaintiff wife now resides in Rhode Island. Therefore, the jurisdictional requirement of residing in this state must be met, if at all, by the defendant husband. Nothing in this opinion is intended to address the issue which would have been presented if the plaintiff wife were a resident of Connecticut.
The defendant argues that this court should grant his motion to dismiss because, as a tribal member and resident of the CT Page 5062 Mashantucket Pequot Indian Reservation, the defendant is not a resident of the state of Connecticut for the purposes of General Statutes § 46b-44. If neither party is a resident, this court lacks subject matter jurisdiction. Williams v. North Carolina,325 U.S. 226, 229-30 (1946).
The plaintiff argues that the Superior Court has both subject matter and personal jurisdiction over the defendant, notwithstanding the defendant's residence on the reservation, and that Connecticut has civil jurisdiction over Indians and Indian lands within its boundaries on matters not affecting tribal sovereignty or tribal affairs.
In view of the plaintiff's residence in Rhode Island, whether the court can exercise subject matter jurisdiction in this matter is dependent on whether reservation Indians are residents of the state of Connecticut for purposes of § 46b-44. Such an inquiry necessarily requires an analysis of federal law with regard to the jurisdictional relationship between the Indian tribe and the state.
 A. Federal Law As To State Jurisdiction Over Tribal Members Living On The Reservation
While the primacy of federal jurisdiction in Indian affairs has never been in doubt, see Worcester v. Georgia, 31 U.S. 512 (6 Pet. 515) (1832); and Williams v. Lee, 358 U.S. 217, 219 (1959), the jurisdictional relationship between the several states and the various Indian tribes has been far less clear. "Essentially, absent governing Acts of Congress, the question has always been whether state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." Williams v.Lee, supra, 358 U.S. 220.
The United States Supreme Court has held that "the assertion of state authority over tribal reservations remains subject to two independent but related barriers . . . First, a particular exercise of state authority may be foreclosed because it would undermine the right of reservation Indians to make their own laws and be ruled by them . . . Second, state authority may be preempted by incompatible federal law."[8] (Citations omitted; internal quotation marks omitted.) Three Affiliated Tribes v.Wold Engineering, 467 U.S. 138, 147 (1984); see also SchaghticokeIndians of Kent, Conn., Inc. v. Potter, 217 Conn. 612, 626-27,587 A.2d 139 (1991). CT Page 5063
In those cases where federal law has not preempted state law regarding Indians and Indian country, the state must determine whether the exercise of jurisdiction over matters concerning reservation Indians would "infringe on the right of reservation Indians to make their own laws and be ruled by them." Williams v.Lee, supra, 358 U.S. 220; White Mountain Apache Tribe v. Bracker,448 U.S. 136, 141-43 (1980).
In determining whether jurisdiction infringes on the rights of reservations, a number of western states have developed a particularized inquiry meant to take into consideration the substantial federal interest in tribal self-government. This inquiry is in three parts: 1) whether the parties involved are Indians or non-Indians; 2) whether the cause of action arose within the Indian reservation; and 3) the nature of the interest to be protected. Chino v. Chino, 561 P.2d 476, 479 (N.M. 1977);Vega v. Medina, 549 N.W.2d 507, 509-10 (Iowa 1996); JacksonCounty Child Support Enforcement Agency v. Swayney,352 S.E.2d 413 (N.C. 1987), cert. denied, 484 U.S. 826 (1987); and Andersonv. Beaulieu, 555 N.W.2d 537 (Minn.App. 1996).
B. Application
In applying the above-mentioned analytical framework, the court notes that the Mashantucket Pequot tribe is a tribe officially recognized by the federal government and the state of Connecticut. 25 U.S.C.A. § 1758; § 47-59a of the Connecticut General Statutes, and that the Mashantucket Pequot reservation is Indian land for purposes of federal and state law.25 U.S.C.A. § 1755; see also State v. Spears, 234 Conn. 78,85 n. 6, 662 A.2d 80 (1995). This court can find no authority asserting that the state of Connecticut has assumed general civil jurisdiction over the Mashantucket Pequot reservation. SeeMashantucket Pequot Tribe v. McGuigan, 626 F. Sup. 245, 249 (D. Conn. 1986) (stating that Connecticut had acquired criminal but not civil jurisdiction over the Mashantucket Pequot reservation). Finally, this court has found no federal law specifically preempting state civil jurisdiction over reservation Indians in actions for dissolution of marriage.
In LaBow v. LaBow, 171 Conn. 433, 370 A.2d 990 (1976), the Connecticut Supreme Court has stated that "[f]or the purposes of filing a complaint for dissolution of marriage or for the granting of alimony or support pendente lite, residence of one CT Page 5064 party, without a showing of domicile, is sufficient to give the court subject matter jurisdiction under [§ 46b-44].[9]LaBow v. LaBow, supra, 171 Conn. 438. However, for the court to have jurisdiction to grant a divorce decree, the statute requires that there be "domicile plus substantially continuous residence in Connecticut by one of the parties for the twelve months next prior to either the filing of the complaint or the granting of the decree. Those connections between either spouse and the state are sufficient to entitle the decree to full faith and credit."[10] LaBow v. LaBow, supra, 171 Conn. 437. Thus, in order for this court to assume jurisdiction over this action one of the parties, the reservation Indian husband, must meet the residency requirement.
Because this court cannot find any Connecticut law addressing the question of whether a reservation Indian is a resident of the state of Connecticut for purposes of § 46b-44, it is necessary to examine the law of other states.
In Wells v. Wells, 451 N.W.2d 402 (S.D. 1990), the South Dakota Supreme Court addressed the subject matter jurisdictional requirement of domicile in a divorce action as it applied to an Indian plaintiff living off the reservation and an Indian defendant living on the reservation. In asserting that the State had jurisdiction, the Court first observed that the United States Supreme Court, in Willams v. State of North Carolina,325 U.S. 226, 229-30 (1946), had established that "[t]he domicile of one spouse within a State gives power to that State . . . to dissolve a marriage wheresoever contracted."[11] Id. 404. Aware that Indian/state relations is governed by the presence or absence of federal law, the South Dakota Court next applied the Lee
infringement test. In finding that the State's assertion of jurisdiction over the action did not infringe on Indian self-government, the South Dakota court stated that "when an Indian leaves the reservation and establishes a new domicile, a situation significantly different from [Williams v.] Lee
arises."[12] Id. 405.
In reaching its conclusion, the Court first hypothesized that if it were faced with a dissolution proceeding in which all the parties were Indians residing on the reservation, a South Dakota Court would clearly lack subject matter jurisdiction to hear the matter. Id. 406. Second, the court observed that even if one of the parties were merely off the reservation in the state of South Dakota that the state court would not necessarily have CT Page 5065 jurisdiction over an Indian party. Id. 405. However, the court found that where one of the parties moves off the reservation and establishes domicile "the tribal sovereignty that the court inLee sought to protect is no longer threatened." Id. The Court concluded that "[o]nce Dolly left the reservation and took up residence in Rapid City, the state acquired an interest in the marriage of Dolly and William, and their divorce can no longer be characterized as a "reservation matter." Id.
In Flammond v. Flammond, 621 P.2d 471 (Mont. 1980), the Montana Supreme Court also analyzed the issue of state subject matter jurisdiction over reservation Indians in a domestic relations dispute. In Flammond, the Montana court held that the district court lacked subject matter jurisdiction in an action for child support brought by an out-of-state plaintiff against a reservation Indian in that there were no off-reservation acts by the defendant in Montana sufficient to vest the state court with jurisdiction over him.
In Flammond, the plaintiff mother brought an action in the Montana district court seeking to enforce child support payments against the defendant father under Montana's Uniform Reciprocal Enforcement of Support Act (hereinafter "URESA"). Id. 472. The couple was married in Montana; they then moved to California. Id.
The wife was a non-Indian; the husband was an enrolled member of the Blackfeet Tribe. Id. Upon the couple's separation, the mother remained in California and established residency, and the father moved back to Montana and lived on the Blackfeet reservation. Id.
The mother subsequently filed a petition under the state of California's URESA law seeking monthly child support. Id. The California Superior Court found that the husband had a duty to provide child support and ordered the filing of an enforcement action in Montana against the husband. Id. The wife brought an action in Montana, and the husband subsequently moved to dismiss the action alleging that the state of Montana had no jurisdiction over him. Id.
In holding that the district court did not have subject matter jurisdiction to entertain the action, the Montana Court stated that "[w]here as here, neither the state nor the tribe has complied with the current federal enabling statutes, 25 U.S.C. § 1321-1326, regulating the extension of state civil and criminal jurisdiction to Indian reservations, Montana may not exercise subject matter jurisdiction over transactions arising on Indian reservations . . . unless the transaction entails CT Page 5066 `significant' or `substantial' contacts with the state outside of reservation boundaries."[13] (Citations omitted.) Id. 472. The court concluded that "[h]ere there are absolutely no off-reservation acts in Montana sufficient to vest state courts with jurisdiction over the respondent, a reservation Indian. The only off-reservation acts occurred in California. It is well-settled that a reservation Indian's domicile on the reservation is not an in-state contact which grants jurisdiction to state courts. Id. 473, citing Fisherv. District Court, 424 U.S. 382 (1976); Kennerly v. District Court,400 U.S. 423 (1971); Williams v. Lee, supra, 238 U.S. 217. TheFlammond court clearly held that the reservation was outside the territorial jurisdiction of the state of Montana.[14] Id.
This court's analysis is framed by jurisdictional reference points gleaned from Wells, Flammond and Vega v. Medina,549 N.W.2d 507 (Iowa 1996).[15] First, federal law has not preempted the state's jurisdiction over Indians involving dissolutions of marriage. Second, residence on a reservation located within the territorial boundary of a state does not satisfy the requirement that a party be domiciled within a state for purposes of granting a dissolution of marriage subject to full faith and credit. Third, Indians or non-Indians, such as the plaintiff here, domiciled off of the reservation, but within the geographical boundary of the state, are treated no differently than any other resident of the state for purposes of divorce actions. Fourth, Indians domiciled on the reservation may be subject to state court jurisdiction if they have sufficient contacts with the state to give the state a strong interest in the matter.
Applying the above-mentioned analysis to the present case, this court is confronted by a dissolution proceeding between a non-Indian plaintiff and an Indian defendant concerning events which occurred off the reservation. Thus, this case is not one where the tribe could assert exclusive jurisdiction over the matter, assuming there was an appropriate tribal forum in which to bring the dispute. However, the non-Indian plaintiff is not a resident of Connecticut for purposes of § 46b-44. While the dispute is between an Indian and a non-Indian, giving the tribe less of a jurisdictional interest, Connecticut courts can only exercise jurisdiction if one of the parties is a resident of Connecticut for purposes of § 46b-44.
The subject matter of this dispute, the breakup of the marriage, neither occurred on the reservation nor in the state of CT Page 5067 Connecticut. While the couple was married in Connecticut, the parties lived most of their married lives in Florida. When the couple returned to the area, the plaintiff established residency in Rhode Island and the defendant moved to the Mashantucket reservation. While these contacts do not weigh in favor of tribal jurisdiction, neither do they weigh in favor of jurisdiction by the state of Connecticut.
The Wells case is most closely analogous to the facts currently before this court. The Wells court, as this court must, had to have residency over one of the parties before it could acquire subject matter jurisdiction. Wells v. Wells, supra. While the Wells case stands for the proposition that a reservation Indian cannot use his or her residency as a shield against a state court action where the party bringing the action is domiciled in that state, the Wells court did hold that the reservation was not a part of South Dakota; it was separate and distinct, and only the domicile of one of the parties in that state and off the reservation gave the court jurisdiction. Id.
While less analogous, the Flammond case also has a telling similarity to the facts in this case. The plaintiff mother was domiciled out of state. The defendant father was domiciled on a reservation in Montana, and the "cause of action" accrued in yet a third state. Flammond v. Flammond, supra. In concluding that it could not exercise jurisdiction in the matter, the court determined that the defendant's residence on the reservation was not a sufficient contact in and of itself to give the court jurisdiction. Id. 473.
The United States Supreme Court has stated that "[u]nder our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicile . . . The domicile of one spouse within a State gives power to that State . . . to dissolve a marriage wheresoever contract . . . Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance." (Citations omitted.) Williams v. North Carolina, 325 U.S. 226, 230 (1944). Divorce deeply affects not merely the individuals involved in the action but also the communities in which they reside. Rhode Island, by virtue of the plaintiff's residence, has an interest in the outcome of the divorce proceeding. The Mashantucket Pequot Tribe, by virtue of the defendant's residency and tribal membership, has an interest in the outcome of the proceeding. This court fails to find a corresponding interest for the state CT Page 5068 of Connecticut.
For the foregoing reasons, the court concludes that a Mashantucket tribal member residing on the reservation does not satisfy the residency requirement of § 46b-44.[16] In ruling thus, this court does not question the previous ruling of valid in personam jurisdiction over the defendant. This court is faced with the peculiar situation in which an out-of-state plaintiff brings a divorce action against a Mashantucket Pequot tribal member living on the reservation. Whether the tribal court has subject matter or personal jurisdiction over this dissolution is not a proper concern of this court. Clearly, even if the tribal court has subject matter jurisdiction over this matter, personal jurisdiction must be validly obtained if the decrees of the tribal court are to be free from collateral attack and entitled to full faith and credit. The defendant's motion to dismiss is granted on the ground that this court lacks subject matter jurisdiction to hear the case.
BOOTH, J.